

October 3, 2022

**BY ECF**
The Honorable Victor Marrero
United States District Court, Southern District of New York
United States Courthouse, 500 Pearl Street
New York, New York 10007
Chambers NYSDMarrero@nysd.uscourts.gov

Wendy J. Olson
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
D. 208.387.4291
wendy.olson@stoel.com

**Re:** *United States Securities and Exchange Commission v. David Lee Stone*, Case No. 1:22-cv-03553-VM (S.D.N.Y) Letter Motion to Modify Asset Freeze

Dear Judge Marrero:

Stoel Rives, LLP represents Brett Adams, a relief defendant, in the above matter. Pursuant to this Court's letter order, we file this reply to the letter filed by Plaintiff U.S. Securities and Exchange Commission (the "SEC"), ECF No. 126, in response to our letter, ECF No. 112, seeking modification of the asset freeze entered by this Court, ECF No. 17, and subsequently modified to allow Mr. Adams living expenses and legal fees, ECF. No. 47.

Notably, the SEC does not dispute significant facts raised by Mr. Adams. He is a relief defendant against whom no wrongdoing is alleged. As required by this Court, he provided a sworn accounting to the SEC prepared by a forensic accountant, at his expense. *See* Ex. A, attached and filed under seal. He is the co-owner of valuable properties in and around Boise, Idaho. Finally, and perhaps most significantly, the SEC still has identified no victims of the conduct at issue in its Complaint. At this juncture, there are no defrauded investors to whom the frozen assets would be returned. In such circumstances, modification of the asset freeze is appropriate. *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001) (the primary purpose of freezing assets is to facilitate compensation of defrauded investors in the event a violation is established at trial).

The SEC's chief complaints are twofold: (1) the properties that Mr. Adams asserts are sufficient to secure any SEC judgment should be assessed at a value lower than the broker's opinion obtained by the forensic accountant and by an online real estate source regularly used by real estate agents and real property purchasers throughout the United States; and (2) Mr. Adams is the co-owner of the property and does not own it outright, thus, the SEC might have more difficulty obtaining the assets when the case is resolved. This argument is flawed for at least three reasons. First, the SEC relies on cases in a different procedural posture and in different proceedings to suggest that these assets and the valuation provided by Mr. Adams are insufficient. Second, the SEC, while arguing at one point that internet sources are unreliable, relies exclusively on a single newspaper article referring to Idaho housing markets (and not commercial property markets) to assert that the valuations provided by Mr. Adams are unreliable and that the property values may drop precipitously prior to resolution of this matter. Finally,

October 3, 2022
Page 2

even if the Court were to accept the SEC's argument that the valuation should be discounted 10-20% because Mr. Adams does not have exclusive control over the properties, the three properties would be worth at least $2,077,545.60 (20% discount), which is a mere $59,937.40 below the freeze amount, and as much as $2,337,238.80 (10% discount), which is well above the freeze amount.

For the first time, and contrary to representations made to counsel for Mr. Adams, the SEC also contends that it is undersecured. ECF No. 126 at 2.[1] Not once in discussions with Mr. Adams' counsel did the SEC make such an allegation. Rather, the SEC's concern at that time was that it wanted Mr. Adams' frozen assets to be liquid so that they could more easily be accessed. The SEC's only request was that Mr. Adams create an account with profits from his companies. But the SEC cites no cases supporting its position that a relief defendant's frozen assets must be liquid, and it continues to ignore the significant negative tax implications to Mr. Adams (whom the SEC does not allege committed any wrongdoing) if he were to create a liquid account by selling property or taking profits from his company.

By demanding that Mr. Adams liquidate assets to satisfy the freeze, including profits from his Companies, the SEC also continues to ignore this Court's Stipulated Order, which directs Mr. Adams and Mr. Robson to "use their best efforts to operate the Companies in a manner designed to maintain and maximize the value of the Companies" and "to avoid dissipating or encumbering the assets of the Companies in any way except when doing so is consistent with the goal of maintaining and maximizing the value of the Companies." ECF No. 47 at 3. With respect to asset freeze issues, the "touchstone of the inquiry is equity." *Stein*, 2009 WL 1181061, at *1. "[T]he disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *Id*. (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir.1972)). The SEC's request for Mr. Adams to create an account with liquid assets is inequitable, contrary to the express terms of the Stipulated Order, and would result in *fewer* assets being maintained. It is profoundly unfair for the SEC to have obtained the benefit of a negotiated Stipulated Order that expressly provided for the assets of the Companies not to be restrained, and then turn around and condition the release of other assets on the restraint of the Companies' profits. The purpose of the Stipulated Order was to make clear that the asset freeze would not inhibit the operation and growth of the Companies, but the SEC is now attempting to do exactly that.

**Conclusion.** The SEC has had the requested accounting from Mr. Adams for two months. Since that time, the SEC has had proof that the Court's current order freezes more than twice the maximum amount it may seek from Mr. Adams if it prevails in whole on its claims. Mr. Adams thus requests that the Court exercise its discretion to modify the freeze order to restrain only Mr. Adams' interests in the three real properties set out in his letter motion.

---

[1] The SEC also makes the unsupported allegation that if Mr. Adams' other assets are unfrozen he would "take millions of dollars of assets" or "strip his liquid assets." ECF No. 126 at 2. This allegation is particularly remarkable given that the SEC has not alleged any wrongdoing by Mr. Adams.

116911467.1 0077415-00001

October 3, 2022
Page 3

Sincerely,

Wendy J. Olson
Per Ramfjord
Chris Rifer

116911467.1 0077415-00001